# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re:

**Hoku Solar, Inc.,**

**Debtor.**

| **Bankruptcy Case No. 13-40839-JDP** |

_____

# MEMORANDUM OF DECISION
_____

Appearances:

    Jed Manwaring, EVANS KEANE, LLP, Boise, Idaho, Attorney for Solectria Renewables, LLC.

    Steve Madsen, MAYNES TAGGART, PLLC, Idaho Falls, Idaho, Attorney for R. Sam Hopkins, Chapter 7 Trustee, Hoku Corporation.

    Janine P. Reynard, Boise, Idaho, Chapter 7 Trustee, Hoku Solar Inc.

MEMORANDUM OF DECISION – 1

### *Background and Facts[1]*

Hoku Solar, Inc. ("Solar") is a corporation whose stock is wholly owned by Hoku Corporation ("Hoku"). Both companies filed chapter 7[2] petitions with this Court on July 7, 2013. Janine Reynard is the trustee in Solar's case; Sam Hopkins is the trustee in Hoku's case. As would be expected, the trustees have endeavored to assemble and liquidate the assets of the companies to create funds to distribute to their creditors, which are not identical.

In 2009 and 2010, in two transactions, creditor Solectria Renewables, LLC ("Solectria") sold goods to Solar on credit. Worden Decl. ¶¶ 2-3, Dkt. No. 119. Shortly after the goods were delivered to Solar, Solectria received payment in full on its two invoices, totaling almost $170,000. *Id.* Solectria's representative alleges that, after payment, it had no further contacts with

---

[1] Counsel for the parties represented at the hearing that the material facts as recited herein are undisputed. In making its decisions, the Court has trusted their assessment, and assumed that only issues of law are implicated.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 2

Solar, other than those related to servicing the delivered products.  *Id.* at

¶ 4.

In June, 2015, Hopkins, as Hoku's trustee, commenced an adversary

proceeding against Solectria.  *Hopkins v. Solectria Renewables, LLC*, Adv. No.

15-08122 (Bankr. D. Idaho June 19, 2015).  In his complaint, Hopkins

alleged that it was Hoku, not Solar, that had paid the two Solectria

invoices, and that he was entitled to avoid the two payments as

constructively fraudulent transfers, and to recover the amounts paid to

Solectria for distribution to Hoku's creditors.  In September, 2015, Solectria

filed an answer, denying any liability for Hopkin's claims.  The adversary

proceeding remains pending.  Unless settled, it is doubtful that the

adversary proceeding will be resolved any time soon.

In the meantime, the deadline for Solar's creditors to file claims in its

bankruptcy case was October 9, 2013.  Am. Notice of Chapter 7 Bankruptcy

Case, Meeting of Creditors, & Deadlines at 1, Dkt. No. 23.  Because it was

unaware of either the Solar or Hoku bankruptcy cases any earlier, after the

deadline had passed, on September 14, 2015, Solectria filed a proof of claim

MEMORANDUM OF DECISION – 3

in the Solar case.  Solectria Mot. at 1-2, Dkt. No. 118; Claims Register at 16.

In addition to filing the proof of claim, on September 9, 2015,

Solectria filed a "Motion re Late Filed Proof of Claim" (the "Motion").  Dkt.

No. 118.  In the Motion, Solectria asks the Court to "enter an order

declaring that Solectria's proof of claim is entitled to treatment, under 11

U.S.C. § 726(a)(2)(C), on the same footing as creditors who filed timely

proofs of claim in [Solar's] bankruptcy case."  *Id.* at 4.

On October 13, 2015, Reynard filed an objection to the Motion, Dkt.

No. 122, and an objection to allowance of Solectria's proof of claim

("Reynard's Claim Objection"), Dkt. No. 123.   Hopkins promptly filed a

joinder in Reynard's objection to the Motion.  Dkt. No. 126.[3]

On January 12, 2016, the Court conducted a hearing on both the

Motion and Reynard's Claim Objection at which counsel for the parties

appeared and argued.  After taking the issues under advisement, this

Memorandum disposes of the Motion and Reynard's Claim Objection.

---

[3] While Hopkins' counsel has argued that Solectria's proof of claim
should not be allowed, curiously, Hopkins did not file a joinder in Reynard's
Claim Objection.

MEMORANDUM OF DECISION – 4

Fed. R. Bankr. P. 7052; 9014.

## *Analysis and Disposition*

## **I.**

The Court first addresses Reynard's Claim Objection.  In it, she generally asserts that Solectria's claim should be disallowed because Solar was not indebted to Solectria as of the date of the petition, or even now. The Court surmises that, through this argument, Reynard targets both Solectria's status as a creditor, and if so, whether its claim should be allowed.

In Solectria's view, while Solar owed it nothing at the time Solar filed for bankruptcy, or even at the time Solectria filed the proof of claim, it nonetheless holds a contingent, unliquidated claim against Solar.  *Id.* Solectria Resp. to Obj. at 2-3, Dkt. No. 134.   Because of this, Solectria contends that it is a "creditor" of Solar, and that its contingent, unliquidated claim should be allowed.  Solectria Resp. 4, Dkt. No. 134.

The Court agrees with Solectria.

///

MEMORANDUM OF DECISION – 5

**A.**

Only a "creditor" may file a proof of claim in a bankruptcy case.

§ 501(a).  Under the Bankruptcy Code, "creditor" means an:

> (A)    entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
>
> (B)    entity that has a claim against the estate of a kind specified in section 248(d), 502(f), 502(g), 502(h) or 502(i) of this title; or
>
> (C)    entity that has a community claim.

§ 101(10).   In short, to be a creditor, Solectria must hold a "claim" that fits

one of the statutory categories.

> **1.    Solectria holds a contingent, unliquidated claim against Solar.**

A "claim" is a right to payment or an equitable remedy *"whether or*

*not such right* is reduced to judgment, liquidated, *unliquidated*, fixed,

*contingent*, matured, unmatured, disputed, undisputed, legal, equitable, or

unsecured."  § 101(5) (emphasis added).  "What constitutes a "claim" in a

bankruptcy case is a 'straightforward issue of statutory construction to be

resolved by reference to the text, history, and purpose of the bankruptcy

code.'"  *In re Hoffman*, 15.3 IBCR 65, 66 (Bankr. D. Idaho 2015) (quoting

MEMORANDUM OF DECISION – 6

*Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)).

Through § 101(5), Congress employed an expansive definition of "claim". Indeed, in construing this provision, the Supreme Court has determined that the "right to payment" means "nothing more or less than an enforceable obligation." *Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990); *see also In re KM Allied of Nampa*, 11.2 IBCR 69, 70-71 (Bankr. D. Idaho 2011). The Ninth Circuit has explained that "[t]he Code utilizes this 'broadest possible definition' of claim to ensure that 'all legal obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case.'" *In re SNTL Corp.*, 571 F.3d 826, 838 (9th Cir. 2009) (quoting *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 929-30 (9th Cir. 1993)) (emphasis in original).

As to what constitutes a contingent or unliquidated claim, the Ninth Circuit Bankruptcy Appellate Panel has observed that:

> The Bankruptcy Code does not define the terms "contingent" or "unliquidated." *In re Nicholes*, 184 B.R. 82, 88 (9th Cir. BAP 1995). However, case law has set forth working definitions of the terms. A contingent claim is "one which the debtor will be called upon to pay only upon the occurrence or happening of

MEMORANDUM OF DECISION – 7

> an extrinsic event which will trigger the liability of the debtor
> to the alleged creditor." *Siegel v. Fed. Home Loan Mortg. Corp.*,
> 143 F.3d 525, 532 (9th Cir. 1998) (quoting *Fostvedt v. Dow (In re
> Fostvedt)*, 823 F.2d 305, 306 (9th Cir. 1987) (internal quotation
> marks omitted)).  In other words, a contingent claim is one
> that has not accrued and depends upon a future event.  *In re
> Dill*, 30 B.R. 546, 548 (9th Cir. BAP 1983).  An unliquidated
> claim is one that is not "subject to 'ready determination and
> precision in computation of the amount due.'"  *Fostvedt*, 823
> F.2d at 306 (quoting *In re Sylvester*, 19 B.R. 671, 673 (9th Cir.
> BAP 1982)).

*In re Falk*, No. BAP NC-12-1385-DJuPa, 2013 WL 5405564, at *6 (9th Cir.

BAP Sept. 26, 2013).

Here, if Hopkins is successful in the adversary proceeding, Solectria

could be ordered to disgorge the money it allegedly received from Hoku to

Hopkins for the benefit of Hoku's creditors.  It is also conceivable that

Solectria and Hopkins could settle the avoidance claim via payment of a

compromised sum.  Either of these developments would constitute the sort

of "extrinsic event" that will revive Solar's liability to Solectria to pay for

the goods it received.  Moreover, approval of a compromise, or entry of a

money judgment against Solectria in favor of Hopkins, will also effectively

liquidate the amount of Solar's revived liability to Solectria.  Clearly, then,

MEMORANDUM OF DECISION – 8

because it might have to disgorge a portion of the monies it received in

payment for the goods it sold to Solar, Solectria holds a contingent,

unliquidated claim in Solar's bankruptcy case.

    **2.    Solectria's claim arose at or before the time Solar filed its
petition.**

Recall, to be a creditor, § 101(10)(A) also requires that an entity's

claim arise "at the time of or before the order for relief concerning the

debtor."  Under § 301(b), "the commencement of a voluntary [bankruptcy]

case . . . constitutes an order for relief . . . ."  Here, the filing of Solar's

voluntary bankruptcy petition constituted an order for relief.

The Ninth Circuit has addressed when a claim "arises" in this

context in *In re SNTL Corp.*,  a case involving insurance companies.[4]  SNTL

had guaranteed the obligations owed by its affiliates to Centre.  572 F.3d at

830.  When the affiliates defaulted, they reached an agreement to pay a

reduced sum of money to satisfy their obligation and, simultaneously,

SNTL's guarantor-liability.  *Id.*  However, after SNTL filed a bankruptcy

---

[4] The Ninth Circuit adopted the decision of the BAP, *In re SNTL Corp.*, 380
B.R. 204 (9th Cir. BAP 2007), as it own.  571 F.3d at 829.

MEMORANDUM OF DECISION – 9

case, a state-law liquidator for the affiliates required Centre to return a

portion of the money it had received from the affiliates as a preference.[5]  *Id.*

Centre then filed a claim in the SNTL bankruptcy case, arguing that SNTL

was once again liable for disgorged monies as a guarantor.  *Id.*  The trustee

in the SNTL bankruptcy case objected to Centre's claim, arguing, among

other things, that it should be disallowed because its claim did not arise at

or before the filing of SNTL's  bankruptcy petition.  *Id.* at 833.

In addressing the claim objection, the court first agreed with Centre

that it held a contingent claim in the SNTL bankruptcy case:  "Centre held

a prepetition contingent claim inasmuch as the guaranty claim was subject

to revival once the state court conservatorship had begun prepetition,

giving rise to a possible (and foreseen) preference action by the

commissioner."  *Id.* at 838.  Having concluded that the return of the

preference revived SNTL's liability to Centre, the court next considered

_____

[5] Prior to SNTL entering bankruptcy, its affiliates were placed into
conservation by the Insurance Commissioner for the State of California, which
was followed by liquidation.  The preference action was filed some fourteen
months after SNTL's petition date.  *SNTL*, 571 at 832.

MEMORANDUM OF DECISION – 10

when Centre's claim "arose":

> . . . [F]ederal law determines when a claim arises under the Bankruptcy Code. "It is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued." The Ninth Circuit has adopted the "fair contemplation" test for determining when a claim accrues for purposes of section 502(b). Under that test, a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law.

*Id.* at 839 (citations omitted). Noting that a provision in the settlement agreement had addressed the potential avoidance of the payment to Centre, and that SNTL's liability to Centre might in the future be revived, the court concluded that the parties could have reasonably contemplated, at the time of the filing of the SNTL petition, that Centre would have a claim against SNTL. *Id.* The court therefore concluded that Centre's claim arose at or before the filing of SNTL's bankruptcy case and should be allowed. *Id.*

The analytical model employed by the court in *SNTL* also applies in Solar's case. While here there was no "agreement" between Solectria and Solar contemplating the possible avoidance of the payments made by

MEMORANDUM OF DECISION – 11

Hoku to Solectria for the goods it sold Solar, because Solectria accepted the

payments from Hoku for a Solar debt, the parties could have reasonably

and fairly contemplated that Solar's liability to Solectria might be revived

should Hoku file for bankruptcy and its trustee seek avoidance of those

payments.  Even if Solectria's revived claim against Solar arguably did not

"arise" at the time it accepted the payments from Hoku, at the latest, the

parties could have reasonably contemplated Solectria may again hold a

claim against Solar once Hoku and Solar both filed their bankruptcy

petitions.  Since that occurred on the same day, the Court concludes, under

the *SNTL* test, for bankruptcy purposes, Solectria's claim in the Solar case

arose "at or before" the time of the order for relief concerning Solar for

purposes of § 101(10)(A).

In summary, applying the Bankruptcy Code, as interpreted by the

case law, the Court concludes that Solectria is a "creditor" in the case as

defined in § 101(10)(A) because it held a contingent, unliquidated claim

MEMORANDUM OF DECISION – 12

that arose on or before the date Solar filed its bankruptcy petition.[6]  As a

creditor, Solectria was therefore eligible under § 501(a) to file a proof of

claim in the Solar bankruptcy case.

**B.**

The Court next turns to whether Solectria's claim in the Solar should

be "allowed."  Reynard and Hopkins both argue that it should not be

allowed because, on the petition date, Solar owed nothing to Solectria, and

Solectria had paid nothing to Hopkins.  But, as discussed both above and

below, this argument misses the mark.

Hopkins further argues that Solectria's claim should be disallowed

pursuant to § 502(d).  Hopkins Joinder at 1-2.  Solectria responds that

---

[6]  Section 101(10)(B) provides that an entity is a also "creditor" if it holds a
claim against an estate under, among other Code provisions, § 502(h).  That
statute provides that a claim arising from the recovery of property via a § 550
avoidance claim is to be allowed "the same as if such claim had arisen before the
filing of the petition."  Section 502(h) is unclear, however, whether it would
apply to a claim arising from the avoidance of a transfer to an entity in
connection with a bankruptcy case other than the bankruptcy case in which the
claim is to be asserted.  Because, in this case, the Court determines that Solectria's
claim arose at or before the filing of the Solar petition for purposes of
§ 101(10)(A), it need not rely upon § 101(10)(B) nor construe § 502(h).

MEMORANDUM OF DECISION – 13

§ 502(d) should not apply to a claim being filed in a different case from the one in which the avoidance litigation occurs.  Solectria Resp. at 5.  Once again, the Court agrees with Solectria.

### 1.    Solectria's claim is not disallowed under § 502(b)(1).

Under § 502(a), "a claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest . . . objects."  If the proof of claim is filed in accordance with Rule 3001, it constitutes prima facie evidence of the validity and amount of the creditor's claim.  Rule 3001(f).  However, once a party in interest objects, in most cases, § 502(b) requires the Court to determine "the amount of the claim . . . as of the date the petition was filed," and to "allow such claim in such amount except to the extent that . . . " it falls within one of the listed reasons for disallowance in §§ 502(b)(1)-(9).

Reynard suggests that Solectria's claim should be disallowed under § 502(b)(1) because it was "unenforceable" against Solar at the time of the petition, and still is.  But a careful reading of § 502(b)(1) reveals that it is inapplicable when a claim is unenforceable solely because it is contingent.

MEMORANDUM OF DECISION – 14

As the Ninth Circuit has clearly stated, "[c]ontingent claims are allowed under section 502(b)." *In re SNTL*, 571 F.3d at 839.

It does not matter that the contingency for Solectria's claim has yet to occur.  Recall, in *In re SNTL*, at the time of the bankruptcy, the settlement relieving SNTL of its guarantor liability was still in effect.  However, it was clear that should the settlement payments be avoided, SNTL's liability to Centre would revive.  In light of this, the Ninth Circuit held that, "a contingent claim should not be disallowed simply because the contingency occurs post petition, a consequence that is plainly at odds with the Bankruptcy Code." 571 F.3d 838.

Here, it was also clear on Solar's petition date that should Solectria be required to disgorge any of the payments it received to Hopkins, Solar's liability to Solectria on its contract to pay for the goods it received would be revived.  Neither Reynard nor Hopkins has disputed that.  Therefore, the fact this contingency has yet to occur is of no consequence.  Solectria's claim is not disallowed pursuant to § 502(b)(1).

**2.      Solectria's claim should not be disallowed under § 502(d).**

MEMORANDUM OF DECISION – 15

Section 502(d) provides that:

Notwithstanding subsections (a) and (b) of this section, the court
shall disallow any claim of an entity from which property is
recoverable under section . . . 550 . . . or that is a transferee of a
transfer avoidable under section . . . 544 [or] . . . 548 . . . unless such
entity or transferee has paid the amount, or turned over any such
property, for which such entity or transferee is liable under section
. . . 550 . . . of this title."

Here, Solectria is alleged to have received a transfer from Hoku that

Hopkins is endeavoring to avoid and recover in the adversary proceeding

under §§ 544(b), 548, and 550.  Given its language, does § 502(d) require

disallowance of Solectria's claim because it may have received an

avoidable transfer from Hoku (not Solar)?

The BAP has explained that interpretation of the Code "begins with

the language of the statute" and that "[a] court must consider the language

itself, the specific context in which that language was used, and the

broader context of the statute as a whole."  *In re Reswick*, 446 B.R. 362, 367

(9th Cir. BAP 2011) (citations omitted); *see also Dolan v. U.S. Postal Service*,

546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase [in a federal

statute] depends upon reading the whole statutory text, considering the

MEMORANDUM OF DECISION – 16

purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.").   Since the provisions of § 502(d) arguably apply to the transfer from Hoku to Solectria, the Court must interpret the statute.   To do so, the Court must consider the purpose of § 502(d).

Section 502(d) serves two purposes.   First, it prevents an entity that has received an avoidable transfer from sharing in the distribution of assets while the entity remains indebted to the estate.   *See In re MicroAge, Inc.*, 291 B.R. 503, 511 (9th Cir. BAP 2002) (*citing In re Mid Atlantic Fund, Inc.*, 60 B.R. 604 (Bankr. S.D.N.Y. 1986)).   In this sense, § 502(d) "ensure[s] equality of distribution of estate assets."   *MicroAge, Inc.*, 291 B.R. at 511 (citing *In re Davis*, 889 F.2d 658, 662 (5th Cir. 1989); *In re KB Toys Inc.*, 736 F.3d 247, 252 (3d Cir. 2013) (citing *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, 379 B.R. 425, 434 (S.D.N.Y. 2007)).   The second purpose of § 502(d) stems from its "coercive effect of insuring compliance with judicial orders."   *MicroAge, Inc.*, 291 B.R. at 511 (citing *Davis*, 889 F.2d at 661); *KB Toys Inc.*, 736 F.3d at 252.

MEMORANDUM OF DECISION – 17

Disallowing Solectria's claim in Solar's bankruptcy case serves neither of these purposes.  In fact, in terms of equality of distribution, it works against it.  If Solectria's claim is disallowed, and Solar's bankruptcy case closes before resolution of the adversary proceeding, Solectria will have no place to turn for payment should it be required to disgorge any sums to Hopkins.  This inequality is exacerbated by the fact that Solectria would be put in this position without benefit to other Solar creditors because any funds Solectria disgorges would go to Hoku's creditors, not Solar's.

In contrast, allowing Solectria's claim promotes a more equitable distribution in the Solar case, regardless of the outcome of the adversary proceeding.  If Solectria is successful in defending against Hopkins' avoidance action, and pays nothing to him, then it has no claim and will receive no distribution from the Solar estate.  On the other hand, if Solectria repays Hopkins some or all of money it received for the goods sold to Solar, then Solectria will participate in a creditor distributions for that amount to the same extent as Solar's other unpaid creditors.  Simply

MEMORANDUM OF DECISION – 18

put, disallowing Solectria's claim contravenes the first purpose of § 502(d).

Moreover, disallowing Solectria's claim does little to fulfill its second purpose. Solectria cannot be coerced to comply with a judicial order that has yet to be entered.[7] Here, Solectria has not yet been ordered to return any payments to Hopkins. And Solectria's ability to participate in distributions in the Solar case should not be a used to pressure Solectria regarding if, or how, it defends against Hopkins' claims. To the Court, this would constitute an overly punitive application of § 502(d). *See, Davis*, 889 F.2d at 661 (explaining that application of § 502(d) should not be used as a penalty for decisions made in pending litigation).

The Court concludes that Solectria's claim is not disallowed under

---

[7] Some courts have held that to disallow a claim under § 502(d), a judicial determination that the entity received an avoidable transfer is required. *In re Vivaro Corp.*, 541 B.R. 144, 154 (Bankr. S.D.N.Y. 2015) (citing *In re Davis*, 889 F.2d at 662; *In re S. Air Transp., Inc.*, 294 B.R. 293, 297 (Bank. S.D. Ohio 2003)). And, even after the claimant's liability has been determined, "the claimant must be provided with a reasonable opportunity to turn over the property . . . before the claim may be disallowed" pursuant to § 502(d). *Id.* (citing *Davis*, 889 F.2d at 662; *Seta Corp. of Boca, Inc. v. Atl. Comput. Sys. (In re Atl. Comput. Sys.)*, 173 B.R. 858, 862 (S.D.N.Y. 1994)). Because the Court concludes that § 502(d) is inapplicable in this context, the Court expresses no opinion on this point.

MEMORANDUM OF DECISION – 19

§ 502(d).

## II.

Having concluded that Solectria's claim should be allowed in Solar's

case, the Court next turns to the issues raised by Solectria's motion.  In it,

Solectria asks the Court to determine that, for purposes of any distribution,

its claim should be treated as timely, on a par with other timely claims,

pursuant to § 726(a)(2)(c).   Solectria's Motion at 3.  Reynard's only

remaining argument against that relief is that because Solectria's claim

arises from a possible avoidance judgment, it can only be deemed timely if

Solectria filed its claim within the time limits set forth in Rule 3002(c)(3).

Obj. to Mtn. at 2-3.  Rule 3002(c)(3) provides that a proof of claim for "[a]n

unsecured claim which arises in favor of an entity or becomes allowable as

a result of a judgment may be filed within 30 days after the judgment

becomes final if the judgment is for the recovery of money or property

from that entity or denies or avoids the entity's interest in property . . . ."

Considering the relationship between § 726 and Rule 3002(c), this

Court has observed:

MEMORANDUM OF DECISION – 20

In a chapter 7 case, a proof of claim, to be timely, must be filed not later than 90 days after the first day set for the meting of creditors called under § 341(a) of the Code.  [Rule] 3002(c).   . . . In a chapter 7 case, extensions of time for filing a proof of claim are limited to the five exceptions listed in Rule 3002(c). [Rule] 9006(b)(3); *In re Downey*, 00.1 I.B.C.R. 34, 34 (Bankr. D. Idaho 2000) (limiting the filing of proofs of claims in a chapter 7 case to the time state in Rule 3002(c); *In re Idaho Nordland Corp.*, 158 B.R. 497, 497-98 (Bankr. D. Idaho 1993) (disallowing a chapter 7 creditor's proof of claim as untimely under Rule 3002(c) because it was filed outside of the 90 day window and no statutory exception applied, but allowing it as tardily filed pursuant to § 726(c).

. . . Section 726 establishes a distributional scheme for Chapter 7 cases.  The statute specifically allows for a distribution to a creditor that files a tardy proof of claim if the creditor holding such claim did not have notice or actual knowledge of the case in time to timely file, and the creditors files in time to permit payment of such claim. § 726(a)(2)(C).  *See also In re Ward* 93.1 I.B.C.R. 225 (Bankr. D. Idaho 1993) (holding that a creditor that files an untimely proof of claim can still receive a distribution with timely claims if the creditor can satisfy the requirements of § 726(a)(2)(C)).

*In re Fleischman*, 02.3 IBCR 139, 139-40 (Bankr. D. Idaho 2002).

Summarizing, while Rule 3002(c), and its listed exceptions, determine whether a claim is filed timely or tardy, it is § 726 that determines the priority of distributions in a chapter 7 case.

MEMORANDUM OF DECISION – 21

Here, it is clear that Solectria filed its claim well after the claims bar date. Thus, under Rule 3002(c), that claim is tardy unless one of five exceptions apply. While there is some dispute as to the applicability of the exception found in Rule 3002(c)(3), for now, the Court may assume it does not apply, and that Solectria's claim was indeed tardily filed. However, even if Solectria's claim is deemed tardy under Rule 3002(c), if Solectria meets the requirements § 726(a)(2)(c), it can still receive distributions as if that claim were filed timely.

Section 726(a)(1) dictates that timely filed § 507 priority claims be paid first when funds are distributed in a chapter 7 case. Under § 726(a)(2)(A) and (B), claims that are timely filed by the creditor, or by another on behalf of the creditor, are paid. Importantly, however, , § 726(a)(2)(c) provides that a tardily filed claim may be treated as if it were timely for distribution purposes if:

> (i) the creditor that holds such claims did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a); and

> (ii) proof of such claim is filed in time to permit payment of such

MEMORANDUM OF DECISION – 22

claim.

As there has yet to be a distribution in Solar's case, Solectria's claim was certainly filed in time to permit its payment.  Thus the Court need only determine a "simple question of fact: Did [Solectria] have notice or actual knowledge of the case in time to allow [it] to file a timely claim?"  *In re Hannah Racing Products, Inc.*, 90 IBCR 222, 229 (Bankr. D. Idaho 1990).

The declaration of Solectria's representative submitted to support the Motion avers that Solectria did not have actual knowledge of Solar's bankruptcy case until May 18, 2015, when it received correspondence from another creditor regarding the Hoku case.  Worden Decl. at ¶ 5, Dkt. No. 119; Solar's Motion at 2, Dkt. No 118.  Of course, this date was well after the claims bar date had passed.  Reynard and Hopkins have offered nothing to dispute this representation.  There is also nothing in the Court's record to show that Solectria was ever notified that Solar had filed this bankruptcy case, nor was Solectria listed on Solar's schedules or mailing matrix.  *See* Debtor's Schedule F at 12-26, 4-46, Dkt. No 1; BNC Cert. of Mailing, Am. Notice of Chapter 7 Bankruptcy Case, etc., at 3, Dkt. No. 32.

MEMORANDUM OF DECISION – 23

On this record, the Court accepts Solectria's proof and finds that it

lacked any actual knowledge or notice of Solar's bankruptcy case in time to

timely file its proof of claim.  Thus, even assuming Solectria's claim is

tardy, under § 726(a)(2)(c), that claim should be treated as if it were timely

filed for distribution purposes in the Solar case.  Under these facts,

Reynard's argument about Rule 3002(c)(3) is of no consequence.  That rule

is simply one of the several exceptions under which a claim filed after the

claims bar date is still considered to be "timely."  But, failing to satisfy one

of the exceptions in that Rule does not prevent a tardy claim from

treatment as timely pursuant § 726(a)(2)(C).

### III.

One other topic deserves mention in this case.  While it is not a basis

to disallow Solectria's claim, the Court is mindful of Reynard's concerns

expressed at the hearing that, if Solectria's claim is allowed, but remains

contingent and unliquidated, she must delay any distribution to creditors,

which in turn may lead to additional expense which may diminish the

MEMORANDUM OF DECISION – 24

estate.[8]  If, indeed, the Solar estate is prejudiced because of the contingent, unliquidated nature of Solectria's claim, Reynard's statutory remedy is a request to estimate that claim.  *See* § 502(c)(1) ("There shall be estimated for purposes of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . .").  Because the Court has determined that Solectria's claim is contingent and unliquidated, in theory, to obtain an estimation of that claim, Reynard need only show that waiting for the resolution of the Hopkins-Solectria adversary proceeding would result in undue delay in the administration of the Solar case.  *Compare Corey*, 892 F.2d 829, 834 (9th Cir. 1989) (concluding estimation of a dissenting creditor's claim was appropriate because the claim was unliquidated and because otherwise the confirmation of the debtor's plan would have been unduly delayed to the detriment of other creditors) *with In re Hamilton*, 91 IBCR 234, 238 (Bankr. D. Idaho 1991)

---

[8]  The Court understood Reynard's principal concern to focus on the significant bank fees that accrue on Solar deposits.

MEMORANDUM OF DECISION – 25

(declining to estimate the claim because it was not causing undue delay).

The Court is granted broad discretion when estimating the amount

an unliquidated claim. *Corey*, 892 F.2d 829 (citing *Addison v. Langston (In re*

*Brints Cotton Mktg., Inc.)*, 737 F.2d 1338, 1342 (5th Cir. 1984); *Bittner v. Boren*

*Chem. Co.*, 691 F.2d 134, 136 (3d Cir. 1982)).  As for how to calculate the

ultimate value of the claim, one bankruptcy court has noted that:

> "Such an estimate 'necessarily implies no certainty' and 'is not
> a finding or fixing of an exact amount.  It is merely the court's
> best estimate for the purpose of permitting the case to go
> forward . . . .'"  In some cases parties have requested courts to
> estimate claims by assigning a present value to the probability
> that the claimants would be successful in an action in another
> court (i.e., allow claim in amount of 40% if only 40% of
> evidence supports the claim).  In *Bittner*, the court of appeals
> held that the bankruptcy court did not abuse its discretion by
> estimating claims according to their ultimate merits and
> assigning a zero value to those claims where it seemed more
> probable than not that the claims would ultimately fail in
> another forum.  Myriad other alternatives for estimating
> claims exist.

*In re Pac. Gas & Elec. Co.*, 295 B.R. 635, 642-43 (Bankr. N.D. Cal. 2003)

(citations omitted).

Even though estimation of Solectria's claim is possible, Reynard may

MEMORANDUM OF DECISION – 26

decide that the cost to the Solar estate involved in doing so may not justify

the endeavor.  However, estimation remains one option[9] to allow Reynard

to make distributions notwithstanding the contingent nature of Solectria's

claim.[10]

### *Conclusion*

For the reasons discussed above, Reynard's Claim Objection will be

denied, and Solectria's Motion will be granted.  Solectria holds a tardily-

filed, allowed, but contingent and unliquidated, claim in this bankruptcy

case.  Under the Bankruptcy Code and the facts, that claim should be

---

[9]  Of course, another option may be to simply reserve Solectria's share of any distribution until such time that the status of its claim is finally resolved.

[10] In addition to the litigation costs inherent in the process, estimation may pose another dilemma for Solectria.  Courts ultimately look to the possible outcome of an underlying action to estimate a claim.  *See Lane* 68 B.R. at 613 (basing an estimation of a claim, in part, on the likelihood the creditor could persuade a jury to award damages); *Bittner*, 691 F.2d at 136-37 (finding no abuse of discretion in estimating claims at zero where, based on the merits, it was more probable than not the claims would fail in another forum); *see also In re Mud King Prods., Inc.*, 2015 WL 862319, at *3 (S.D. Tex. Feb 27, 2015) (discussing the "probabilistic methodology" used by a court in estimating claims).  While Solectria denies any liability to Hopkins in the adversary proceeding, in the face of an estimation request in this case, Solectria would be required to show that it is likely that Hopkins will prevail, and that it will have to disgorge funds to him. To the Court, this seems a good reason why Solectria, Reynard and Hopkins ought to settle this contest.

MEMORANDUM OF DECISION – 27

treated the same as timely filed claims when any funds are distributed.

A separate order will be entered.

Dated:  February 12, 2016

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 28